**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Morris Fox, Jr., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:24-cv-04097 |
| | § | |
| Schneider National Carriers, | § | |
| | § | |
| *Defendant*. | § | |

**JUDGE PALERMO'S**
**REPORT AND RECOMMENDATION**

This is an employment-discrimination case. ECF No. 19. Defendant Schneider National Carriers ("Schneider") moves for summary judgment. ECF Nos. 63–64.[1] Plaintiff Morris Fox, Jr., responded, ECF Nos. 65–66, and Schneider replied, ECF No. 67. After considering the parties' briefing, the summary judgment record, and the applicable law, Defendant's motion for summary judgment should be granted.

## I.　BACKGROUND

Schneider is a national trucking company, and on December 6, 2021, it hired Fox as a driver for "its Jet Set Mobile Fleet in its Intermodal Division." ECF No. 64 at 3. As a Jet Set driver, Schneider would fly Fox "to locations across the country to haul freight based on company need." *Id.* Fox would work for 21-day stints, "fly

---

[1] The district judge to whom this case is assigned referred all pretrial proceedings to this Court under 28 U.S.C. § 636(b)(1). ECF No. 13.

back home, and then have five days off." *Id.*

Although he lived in Houston, Texas, Fox "was assigned to Schneider's North Baltimore, Ohio, operating center." *Id.* Fox reported to several supervisors—called "Driver Team Leader[s]"—during his employment. *Id.* Initially, he reported to Michael Doss from December 2021 to June 2022, "then to Brian Myers from June 2022 to March 2023, back to . . . Doss until August 2023, and finally to Joe Cheslock" through January 31, 2024. *Id.*

While working for Schneider, Fox "held several positions" that each carried a different pay grade, "including Jet Set Driver, driver mentor, and Training Engineer." *Id.* at 4. "Pay varied based on the work performed; for example, mentoring a student driver paid more than hauling freight." *Id.* Fox's supervisors "were responsible for assigning appropriate pay grades" and adjusting them "based on the duties performed." *Id.* On several occasions, Fox's supervisors entered delayed adjustments to his pay grade assignments, resulting in temporary errors to his pay. *Id.* Fox would raise the issue, Schneider would fix the problem, and in the end, Fox "received all [the] money he was owed." *Id.*; 64-1 at 67:12–15.

Starting in early 2022, Fox would regularly complain to his supervisor—then Michael Doss—about errors in his pay. ECF No. 19 ¶ 14; ECF No. 66 at 4 (¶ 6). During the conversations, Doss allegedly referred to Fox as "boy," told him to "be grateful that you're getting a check," and joked about how many "baby mothers"

Fox had. ECF No. 66 at 4 (¶ 6). In December 2022, Fox claims another "Schneider employee used the phrase 'y'all people' toward [him] and hung up the phone" during a "safety-sensitive dispatch communication[]." *Id.* at 5 (¶ 8). Then in April 2023, a different employee allegedly called Fox a "dumb stupid ass boy." *Id.* (¶ 9).

Rewinding a bit, Fox started reporting to Myers sometime in June 2022. ECF No. 64 at 4–5. Around October or November of that year, Fox informed Myers that he wanted to become a "Training Engineer." *Id.* at 5. Training Engineers "teach and mentor student drivers during their final stage of training before" becoming full-fledged drivers. *Id.* Myers filled out the appropriate paperwork and submitted it to Aaron Funk on Fox's behalf. *Id.* At that time, however, Training Engineer "classes in the Chicago region were . . . offered infrequently" because Schneider was hiring few student drivers and thus did not need many Training Engineers. *Id.* By mid-January 2023, classes "were placed 'on hold indefinitely' due to lack of business need." *Id.* (quoting 64-5 ¶¶ 13–14). Consequently, Schneider did not schedule Fox for a Training Engineer class "until November 6, 2023," the first available one "in his region." *Id.* at 6.

While waiting for the Training Engineer class to become available, Ray Large—Schneider's Operations Manager for North Baltimore, Ohio (Fox's bosses' boss)—chose Fox to participate in Schneider's Ambassador program. *Id.* at 7. As an ambassador, Fox "represent[ed] Schneider at driver-training academies" and was

paid accordingly. *Id.* Around the same time, Cheslock selected Fox to represent Schneider at a Kaizen event "to provide operational feedback and share best practices with new drivers across different markets." *Id.* Fox "was one of only two Schneider drivers selected" for the Kaizen event. *Id.*

In October 2023, Fox applied to become an Operations Support Representative ("OSR") "at Schneider's Houston operating center." *Id.* at 8–9. "OSRs are senior trainers permanently stationed at an operating center," and they train and assist "drivers on driving-related matters" and ensure "compliance with Schneider policies and Federal Motor Carrier Safety Administration regulations." *Id.* at 9. Schneider considered Fox for the Houston OSR role but ultimately selected "Saleem Kavumpurath" because he had two-and-a-half more years of tenure at Schneider "and had already been [successfully] performing OSR duties in a part-time 'floater' capacity, making him familiar with the [OSR] responsibilities." *Id.*

About a month later, Fox attended the November 6, 2023 Training Engineer class in Fort Worth, Texas, led by Antonio Sobers. *Id.* at 7. During the class, Fox asked Sobers "if he could also attend Road Instructor . . . class." *Id.* Sobers said yes and enrolled Fox in an upcoming class. *Id.* at 8. Sobers later learned, however, that Fox "could not attend . . . because he had not submitted the required formal application"; Sobers informed Fox the class was canceled and advised him "to submit an application if he was still interested." *Id.*

In the background of all this, Fox's wife was diagnosed with cancer. *Id.* at 9–10. Fox told his supervisors some time in 2023 and requested "routes closer to Houston to be near her." *Id.* Schneider accommodated his requests and in late 2023, Cheslock, Fox's then-supervisor, "discussed potential transfer opportunities available in the Houston area." *Id.* at 10. On January 30, 2024, Fox notified Cheslock "that he would take a local Houston opportunity." *Id.*; ECF No. 64-9 at 4, 6. Cheslock "initiated the transfer process" and informed Fox the next day "that his new supervisor would be Eric Mansel." ECF No. 64 at 10. The Houston position paid less than Fox's Jet Set driver position, but it allowed him to be closer to his wife. *Id.*

On January 31, 2024, Fox emailed his resignation to several Schneider supervisors. *Id.* "Schneider leadership attempted to contact [him] to discuss his resignation, but [he] did not respond." *Id.*

About 9 months later, Fox filed this case against Schneider. ECF No. 1. Fox asserts that the errors in his pay, the delay in attending the Training Engineer class, the cancellation of the Road Instructor class, the failure to promote him to the OSR position, and the demotion to the Houston position constitute racial discrimination and retaliation under Title VII and 42 U.S.C. § 1981. ECF No. 19. He also alleges that Schneider retaliated against him for complaining about the remarks made by other employees. *Id.*

After conducting discovery, Schneider now moves for summary judgment. ECF No. 64.

## II.   SUMMARY JUDGMENT STANDARD

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Cory v. Stewart*, 103 F.4th 1067, 1072–73 (5th Cir. 2024) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it could affect the suit's outcome under governing law." *Reynolds v. Kuraray Am., Inc.*, No. 4:22-CV-00182, 2026 WL 861071, at *2 (S.D. Tex. Mar. 30, 2026). "And '[a] dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* (internal quotation marks omitted) (alteration in original) (quoting *TIG Ins. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)). Conversely, "[t]here is no genuine issue for trial when 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"The moving party 'always bears the initial responsibility of informing the district court of the basis for its motion' and identifying the record evidence that 'it believes demonstrate[s] the absence of a genuine issue of material fact.'" *Reynolds*,

2026 WL 861071, at \*2 (alteration in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Id.* (alterations in original) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

"'[O]nce a movant . . . makes a properly supported motion for summary judgment, the burden shifts to the nonmovant to show that the motion should not be granted' by 'identifying specific evidence in the record and articulating the precise manner in which that evidence supports her claim.'" *Associated Prof'l Educators of La. v. Edu20/20, L.L.C.*, No. 24-30640, 2026 WL 448019, at \*8 (5th Cir. Feb. 18, 2026) (original alterations removed) (quoting *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016)). The district court does not "have a duty to sift through the record in search of evidence to support the nonmovant's opposition to summary judgment." *Id.* (internal quotation marks omitted) (quoting *Edwards*, 841 F.3d at 363).

Courts must "resolve factual controversies in favor of the nonmoving party" but need "not consider 'conclusional allegations and unsubstantiated assertions.'" *Cory*, 103 F.4th at 1073 n.8 (first quoting *Little*, 37 F.3d at 1075; and then quoting *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011)).

### III.    FOX CANNOT PROVE HIS EMPLOYMENT-DISCRIMINATION OR RETALIATION CLAIMS.

Fox asserts claims for racial discrimination and retaliation under both Title VII and 42 U.S.C. § 1981. For the reasons outlined below, both fail.

### A. Fox Cannot Prove His Employment-Discrimination Claims.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of [the] individual's race." 42 U.S.C. § 2000e-2(a)(1). Similarly, § 1981 "prohibits racial discrimination in the making and enforcement of contracts." *Kirksey v. Nat'l Multiple Sclerosis Soc'y*, No. 4:24-CV-00871, 2026 WL 765267, at *5 (S.D. Tex. Jan. 15, 2026), *adopted*, No. 4:24-CV-00871, 2026 WL 712860 (S.D. Tex. Mar. 13, 2026); 42 U.S.C. § 1981. Because "[t]he analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims," courts analyze them together. *Abdallah v. Mesa Air Grp., Inc.*, 83 F.4th 1006, 1013 n.5 (5th Cir. 2023) (quoting *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017)).

"A plaintiff who can offer sufficient direct evidence of intentional discrimination should prevail[.]" *Clark v. City of Alexandria*, 116 F.4th 472, 486 (5th Cir. 2024) (quoting *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir. 1996)), *cert. denied*, 145 S. Ct. 1331 (2025).

As an initial matter, Fox contends that "multiple Schneider employees,"

including Doss, made racially charged remarks, including calling him a "dumb stupid ass boy," referring to him with the phrase "y'all people," asking about his "baby mothers," and telling him to be "grateful" he's getting a paycheck. ECF No. 65 at 4; ECF No. 66 at 4–5. Comments like these can constitute direct evidence of discrimination if they are "(1) related to the plaintiff's status as a member of a protected class, (2) proximate in time to the adverse employment action, (3) made by someone 'with authority over the challenged employment decision,' and (4) related to the challenged decision." *Eaglin v. Tex. Child.'s Hosp.*, 801 F. App'x 250, 255 (5th Cir. 2020) (quoting *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476 (5th Cir. 2015)).

No reasonable jury could conclude that the remarks alleged here constitute direct evidence of discrimination. For starters, Fox does not identify which Schneider employees called him a "dumb stupid ass boy" or referred to him with "y'all people." He points to no evidence suggesting these remarks were proximate in time to any adverse employment action—much less related to the action—or even made by someone with authority over him. Moreover, it is not clear whether the phrase "y'all people" even referred to Fox's race, since the comment was made over the phone. ECF No. 66 at 5 (¶ 8).

Fox also offers no evidence to prove the remaining remarks Doss made were discriminatory. Doss' comment about being "grateful" for getting a paycheck is not

related to Fox's race on its face. Additionally, Fox fails to show that Doss' remarks calling him a "boy" and joking about "baby mothers" were proximate in time to or otherwise related to any particular adverse employment action. Even assuming Doss made those remarks while he was supervising Fox—and therefore had authority to adjust Fox's pay grade based on the work he performed—Fox admits that he experienced pay issues under multiple supervisors, not just Doss. ECF No. 65 at 3. Fox does not allege, however, that his other supervisors made similar remarks.

At bottom, there is simply no evidence that the remarks related to his pay instability or any other adverse employment action. Thus, Fox has failed to establish direct evidence of discrimination.

Without direct evidence, Fox must rely on circumstantial evidence. "[B]ecause direct evidence of discrimination is rare," however, the Supreme Court devised a burden-shifting procedure—dubbed the *McDonnell Douglas* framework— that "establishes an orderly presentation of proof in discrimination cases." *Clark*, 116 F.4th at 486 (quoting *Nichols*, 81 F.3d at 40). Under that framework, a plaintiff must first demonstrate that "(1) he is a member of a protected group; (2) he was qualified for his position; (3) he was discharged or suffered some adverse employment action; and (4) he was replaced by someone outside of his protected group or was treated less favorably than other similarly-situated employees outside the protected group." *Kirksey*, 2026 WL 765267, at *6 (citing *Clark*, 116 F.4th at

486). If the plaintiff can satisfy that initial hurdle, "the burden then shifts to the employer to 'articulate a legitimate non-discriminatory reason for' its action." *Id.* (quoting *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016)). If the employer offers a nondiscriminatory justification, "the burden shifts back to the plaintiff 'to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual.'" *Id.* (quoting *Cannon*, 813 F.3d at 590).

Here, it is undisputed that Fox is a member of a protected group as he is Black and that he was qualified for his positions at Schneider. The issues are, then, whether a reasonable jury could find that he suffered an adverse employment action and was treated less favorably than non-Blacks.

### i.    *Fox has no evidence of an adverse employment action.*

Under old precedent, discrimination claims were "actionable only if [they] amount[ed] to an 'ultimate employment decision such as hiring, granting leave, discharging, promoting, or compensating.'" *Yates v. Spring Indep. Sch. Dist.*, 115 F.4th 414, 420 (5th Cir. 2024) (original alteration removed) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007)). The Fifth Circuit recently overturned that precedent, holding "that a plaintiff need not show 'discrimination with respect to an ultimate employment decision'" any longer. *Id.* (internal quotation marks omitted) (quoting *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 506 (5th Cir. 2023)). Now, an employee need only establish "that [he] was discriminated against,

because of a protected characteristic, with respect to . . . the terms, conditions, or privileges of employment." *Id.* (alterations in original) (internal quotation marks omitted) (quoting *Hamilton*, 79 F.4th at 506). Although an employer is not liable for "de minimis workplace trifles," the Fifth Circuit has "declined to address 'the precise level of minimum workplace harm' necessary to sustain a discrimination claim." *Id.* (quoting *Hamilton*, 79 F.4th at 506). Not long after the Fifth Circuit's decision, the Supreme Court similarly held that "[a]lthough an employee must show some harm . . . to prevail in a Title VII suit, [he] need not show that the injury satisfies a significance test." *Id.* (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 350 (2024)).

Here, Fox essentially alleges that he suffered the following adverse employment actions as a result of race-based discrimination: (1) constant errors in his pay adjustments, (2) having to wait until November 2023 to attend his Training Engineer class, (3) having his Road Instructor class cancelled, and (4) being transferred to the lower-paying Houston position, constituting a demotion and forcing him to quit. Schneider argues that none of these qualify as adverse employment actions. Schneider is correct.

First, Fox cites no evidence to show that the errors in his pay adjustments affected the "terms, conditions, or privileges of employment" with Schneider. *Hamilton*, 79 F.4th at 506. In fact, he admits that Schneider corrected each error and

paid him everything he was owed. ECF No. 64 at 16; ECF No. 64-1 at 67:12–15. Fox does not explain—much less prove—how temporary payroll issues altered the conditions of his employment.

Second, Fox fails to demonstrate how waiting until November 2023 to attend the Training Engineer class affected his conditions of employment, especially since he continued to work as a Jet Set driver and was even selected to represent Schneider in the ambassador program and Kaizen event in the interim. ECF No. 64 at 7.

Third, nothing in the record indicates how being unable to attend the Road Instructor class affected Fox's employment. Again, he continued to work for Schneider and even received extra opportunities and compensation for participating in the ambassador program and Kaizen event. *Id.*

Fourth, Fox cannot establish that taking the lower-paying Houston role constituted an adverse action. "An employee's voluntary transfer to a lower position does not qualify as an adverse employment action absent some further proof of work conditions so intolerable as to constitute constructive demotion." *Gibbs v. City of Hous.*, No. CV H-18-4278, 2020 WL 7696093, at *5 (S.D. Tex. Dec. 28, 2020) (quoting *Obondi v. UT Sw. Med. Ctr.*, No. 3:15-CV-2022-B, 2017 WL 2729965, at *7 (N.D. Tex. June 23, 2017)). Schneider submits evidence that Fox requested a transfer to Houston to be closer to his ailing wife, ECF No. 64-3 at 3, and Fox does not deny it—much less submit contradicting evidence. The undisputed evidence then

shows that Fox voluntarily accepted the Houston position. ECF No. 64-9 at 6. Meanwhile, Fox points to nothing to indicate that his working conditions were intolerable. In fact, Fox's own testimony shows that Schneider allowed him to take routes closer to Houston to be closer to his wife. ECF No. 64-1 at 40:18–23. No reasonable jury could conclude that Fox was pressured into accepting the Houston role based on this record.

Because Fox cannot prove he suffered an adverse employment action, he cannot establish a *prima facie* case under Title VII or § 1981. Accordingly, Schneider is entitled to summary judgment on Fox's employment-discrimination claims.

### ii.    *Fox has no evidence that he was treated less favorably than similarly situated non-Black employees.*

Fox's claims fail for another reason: he cannot prove that he was treated less favorably than similarly situated non-Black employees. To establish a *prima facie* discrimination case, plaintiffs must prove they "were replaced by someone outside their protected group or were treated less favorably than other similarly situated employees outside the protected group." *Clark*, 116 F.4th at 486 (quoting *McCoy*, 492 F.3d at 556). To prove less favorable treatment, "he must 'point to a comparator who was similarly situated and received more favorable treatment under *nearly identical circumstances*.'" *Id.* (emphasis added and internal quotation marks omitted) (quoting *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021)).

Here, Fox cannot establish an adequate comparator. At best, Fox asserts that "[w]hite drivers did not experience recurring pay instability" and that these "white comparators" were "under the same manager (Ray Large)" and "supervised within the same decision-making chain, including Mike Doss." ECF No. 65 at 4. Yet, beyond Doss, Fox fails to identify the "white drivers," let alone prove they worked under the same manager or under nearly identical circumstances. Moreover, Doss worked in an entirely different position as a supervisor, including *supervising Fox*, and was supervised by someone else—Ray Large. He clearly was not working under nearly identical circumstances as Fox. *See Clark*, 116 F.4th at 486–87 (affirming conclusion that plaintiff failed to establish comparator because "the only fellow employee whom [he] identified . . . was (1) supervised by someone other than [his] supervisor, (2) two ranks lower than [him], and (3) held a dramatically different role"). The only other evidence Fox has that white drivers did not suffer pay errors is a phone call "from Danny Marlatt," in which Marlatt "stated that he did not experience recurring pay problems." ECF No. 66 at 5 (¶ 16). Setting aside the fact that Marlatt's statement is hearsay and therefore not competent summary judgment evidence,[2] Fox himself admits that Marlatt did not work on the Jet Set Fleet and

---

[2] "The touchstone of competent summary judgment evidence is that it may be reduced to admissible form at trial." *Mota v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 2:23-CV-00116, 2025 WL 868723, at *2 (S.D. Tex. Mar. 20, 2025); *Heller v. Shahroodi*, No. H-17-2544, 2019 WL 1556315, at *3 (S.D. Tex. Feb. 20, 2019) ("The Court may consider hearsay at the summary judgment stage if the hearsay could be reduced to a form admissible at trial."). Here, Marlatt's statement is classic hearsay with no readily apparent exception.

reported to a different supervisor. ECF No. 64-1 at 45:20–46:16. Therefore, Marlatt is not an adequate comparator either.

Fox likewise fails to allege any comparators with respect to any other challenged actions. He submits no evidence of similarly situated non-Black employees who did not have to wait until November 2023 to attend a Training Engineer class in Chicago or Texas. Nor does he identify any comparators who attended the canceled Road Instructor class or were able to attend a different Road Instructor class without submitting the required paperwork beforehand. He speculates that Ed Penton attended a class "with no problem" but also admits he does not know when or where Penton attended class, who supervised him, or whether the circumstances were comparable. ECF No. 64-1 at 125:22–128:12.

Simply put, there is no evidence that non-Black employees were treated any differently—let alone more favorably. Accordingly, Fox cannot establish a *prima facie* case, and Schneider is entitled to summary judgment.

### iii.    *Fox has no evidence to establish pretext.*

Even if the Court assumes that Fox could establish a *prima facie* case, his claims still fail because Schneider has articulated legitimate, nondiscriminatory reasons for its actions and Fox has provided no evidence to rebut those reasons as pretext.

Schneider explains that Fox's pay errors occurred because Fox "held multiple

roles with different pay grades, requiring frequent administrative adjustments by" his supervisors, "creating an increased risk of error that was ultimately corrected." ECF No. 64 at 16. Fox offers no evidence to the contrary. If anything, one of the emails Fox attaches to his response corroborates the fact that technical payroll issues caused his pay irregularities, not discrimination. ECF No. 66 at 21 (explaining that when Fox was moved "to the [Training Engineer] Certification course [pay] grade," the payroll system applied the incorrect rates to prior work performed).

Schneider contends that Fox had to wait until November 2023 for the Training Engineer class because the "classes were placed on hold due to business needs and class availability." ECF No. 64 at 15; ECF No. 64-5 ¶ 13. Again, Fox offers no evidence to the contrary.

Schneider maintains that it cancelled the Road Instructor class because it "made a companywide decision to convert the [Road Instructor] role from a 'flex'/part-time position to a full-time position requiring a formal application." ECF No. 64 at 18; ECF No. 64-7 ¶¶ 8–11. To counter, Fox speculates that Penton, a white driver, attended a class "with no problem." ECF No. 64-1 at 125:18–21. However, Fox's unsubstantiated assertion cannot by itself establish pretext, especially where uncontradicted evidence shows that Penton attended the class in April 2022, nineteen months before Fox enrolled in the class. ECF No. 64-7 ¶ 13. Another employee attending a class over a year-and-a-half earlier does not suggest Schnieder's decision

to cancel Fox's class was pretextual.

Schneider asserts that it transferred Fox to the local Houston role because Fox requested it "to be closer to his wife." ECF No. 64 at 19; ECF No. 64-3 ¶ 14. Fox submits no evidence to rebut Schneider's claim. Indeed, he does not even deny it.

Schneider has articulated legitimate, nondiscriminatory reasons for every one of its actions, and Fox has entirely failed to produce evidence indicating that Schneider's reasons are pretextual. Accordingly, Schneider is entitled to summary judgment.

### iv.    Fox's failure-to-promote claim also fails.

Because missing out on a promotion is almost definitionally adverse, failure-to-promote claims have a slightly different test. Specifically, "a plaintiff challenging a failure to promote must first establish a prima facie case demonstrating that '(1) he was not promoted, (2) he was qualified for the position he sought, (3) he fell within a protected class at the time of the failure to promote, and (4) the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of his race.'" *Stelly v. Dep't of Pub. Safety & Corr. La. State*, 149 F.4th 516, 522 (5th Cir. 2025) (quoting *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346–47 (5th Cir. 2013)). Like the normal discrimination test, if an employer articulates "a legitimate, nondiscriminatory reason for not promoting the plaintiff," the "burden shifts back to the plaintiff to demonstrate that the proffered

nondiscriminatory reason is a mere pretext for discrimination or that the plaintiff's protected characteristic was another motivating factor for the action." *Id.* (quoting *Autry*, 704 F.3d at 347).

Here, it is undisputed that Fox applied to the OSR position but was not selected, ECF No. 66 at 8–9, that he was qualified for the position, *id.*, and that he fell within a protected class at the time he was rejected for the promotion, *id.* at 2. However, Fox cites no evidence that Saleem Kavumpurath—the man who ultimately received the OSR position—is non-Black. Even if he is, though, the bigger issue still remains: Schneider promoted Kavumpurath "because he had significantly greater tenure than [Fox] and relevant experience, including prior service performing OSR duties in a part-time 'floater' capacity," which Fox did not. ECF No. 64 at 20; ECF No. 64-8 ¶ 9. Promoting "a better qualified applicant is a legitimate and nondiscriminatory reason for preferring the successful applicant over the rejected employee who claims that the rejection was discriminatory." *Stelly*, 149 F.4th at 522 (quoting *Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 693 F.2d 589, 590–91 (5th Cir. 1982)). Fox submits no evidence to rebut Schneider's legitimate, nondiscriminatory reason for failing to promote him.

Thus, Fox's failure-to-promote claim fails.

### B. Fox Cannot Prove His Retaliation Claims.

To succeed on a retaliation claim under either Title VII or § 1981, "a plaintiff

must show that: (1) she engaged in activity protected under the statute, (2) her employer took an adverse employment action against her, and (3) a causal connection exists between the protected activity and the adverse action." *Lewis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 134 F.4th 286, 295 (5th Cir. 2025).[3] "To establish a causal connection, the protected activity and the adverse employment action must have 'very close temporal proximity.'" *Julien v. St. John the Baptist Par. Sch. Sys.*, No. 24-30045, 2024 WL 4120249, at *1 (5th Cir. Sept. 9, 2024) (quoting *Newbury v. City of Windcrest*, 991 F.3d 672, 679 (5th Cir. 2021)).

For the reasons explained above, Fox cannot establish that Schneider took any adverse employment action against him. That alone dooms his retaliation claims.

Besides that, Fox also fails to identify in which protected activity he engaged. Filing a complaint with the EEOC is a protected activity, *Lewis*, 134 F.4th at 295, but Fox did not file his complaint with the EEOC until after he left Schneider. ECF No. 19 ¶ 10. His EEOC complaint, then, could not have caused Schneider's alleged retaliation.

At best, Fox "complained to Rich Chandler and Ray Large about" Doss'

---

[3] *Brenyah v. Columbia Hosp. Corp. of Bay Area*, No. 2:21-CV-00087, 2024 WL 5516008, at *28 (S.D. Tex. Oct. 7, 2024) (explaining the same test applies under both Title VII and § 1981), *adopted*, No. 2:21-CV-00087, 2025 WL 830552 (S.D. Tex. Mar. 17, 2025); *accord Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (same).

remarks. ECF No. 64 at 24; ECF No. 64-1 at 69:7–71:1; 91:2–94:14. Even assuming these complaints qualify as protected activities, Fox does not establish the connection between them and the alleged adverse employment actions. For example, Fox provides no evidence that his complaints caused his pay errors. Just the opposite: he testified that he began having pay issues in December 2021, over 6 months before he complained to Chandler and Large in July 2022. ECF No. 64-1 at 69:7–11; 165:11–15. His complaints could not have retroactively caused his pay instability.

Likewise, the evidence shows that "Large recommended and supported" Fox's application to take the Training Engineer class *after* Fox had complained. ECF No. 64 at 24; ECF No. 64-4 ¶¶ 11–12. There is no evidence that Drella, the person who cancelled the Road Instructor class, knew about Fox's complaints. ECF No. 64 at 25; ECF No. 64-8 ¶ 11. Nor does Fox point to anything that suggests Cheslock knew about his complaints before transferring Fox to Houston. ECF No. 64 at 26; ECF No. ¶ 18. Put simply, Fox cites nothing to establish a causal connection between any protected activity and any adverse action.

Additionally, for the reasons explained above, Fox cannot rebut Schneider's legitimate, nondiscriminatory reasons for any of its actions.

For all these reasons, Fox's retaliation claims fail, and Schneider is entitled to summary judgment.

## IV.    CONCLUSION

Accordingly, the Court **RECOMMENDS** Schneider's motion for summary judgment, ECF No. 63, be **GRANTED**.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error.** *Acosta v. Williamson Cnty., Tex.*, **No. 23-50777, 2024 WL 3833303, at \*11 (5th Cir. Aug. 15, 2024) (citing** *Quinn v. Guerrero*, **863 F.3d 353, 358 (5th Cir. 2017)).**

**IT IS SO ORDERED.**

Signed at Houston, Texas, on June 9, 2026.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**